IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–03554–CMA–KMT

JEREMY MEUMANN,

    Plaintiff,

v.

PEERLESS IDEMNITY INSURANCE COMPANY,

    Defendant.

## ORDER

    This matter is before the court on "Defendant's Motion to Compel Fed. R. Civ. P. 35 Examination," filed on May 4, 2020. [("Motion"), Doc. No. 26.] Plaintiff has responded in opposition to the motion, and Defendant has replied. [("Response"), Doc. No. 31; ("Reply"), Doc. No. 33.] For the following reasons, the motion is GRANTED.

    Defendant Peerless Indemnity Insurance Company ("Peerless") seeks an independent medical examination ("IME") of Plaintiff Jeremy Meumann. [Mot. 1-4.] Plaintiff objects, relying on *Shultz v. GEICO Cas. Co.*, 429 P.3d 844 (Colo. 2018). [Resp. 7-11.] Neither party disputes that, in *Schultz*, the Colorado Supreme Court recognized that "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision." *Schultz*, 429 P.3d at 847 (*citing State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011)). The court in *Shultz* found, that once the insurer has already made its coverage decision, conducting an IME at some later date generally will not provide

information that is relevant to its earlier decision to deny benefits. *Id.* at 849. In this case, the determining factor is whether Defendant has, in fact, rendered a "decision to deny benefits" to its insured, Plaintiff Meumann. This court finds that it has not.

The claim arises out of a November 11, 2015 car accident, where Plaintiff was rear-ended by a third party. [("Complaint"), Doc. No. 3 at ¶¶ 3-6.] The third party's insurance carrier was involved in the claim initially, and on December 19, 2017, paid Plaintiff the maximum limits of the policy, $25,000.00. [*Id*. at ¶¶ 5, 10-11.] Nine months later, and almost three years after the accident, on or about August 21, 2018, Plaintiff asked his own insurance carrier, Defendant Peerless, to make payment, pursuant to his underinsured motorist ("UIM") coverage benefits. [*Id*. at ¶ 14.] At that time, Plaintiff informed Defendant that he had $49,857.64 in medical bills, and advised the insurer that he would need expensive follow up treatments, perhaps as often as every six to twelve months, for an unforeseen amount of time. [*Id*. at ¶ 14(a).] Defendant's claim notes indicate that it contacted Plaintiff's counsel, on August 30, 2018, clarifying that the UIM claim did not involve shoulder or knee issues. [Resp. 2.] The parties exchanged telephone calls over the next few months, and on November 7, 2018, Meumann provided Peerless with the medical and billing records of Dr. Vanston Masri, D.O. [Compl. ¶ 14(e); Resp. 2.][1] Claim notes from Peerless show that, on November 8, 2018, and December 4, 2018, the insurer was verifying information regarding the third-party carrier payments, and awaiting additional materials from Plaintiff's counsel. [Resp. Ex. 3 at 6.]

---

[1] It appears that Dr. Masri's initial "report," as opposed to medical records and billing, was provided to Defendant on August 21, 2018. [*See* Resp. 2.]

Plaintiff claims that he left numerous voicemail messages with Defendant's adjuster over the next two months, and on February 22, 2019, sent a letter and additional medical bills, at that point totaling $65,473.94, and asked for reimbursement under his policy for UIM benefits. [Compl. ¶ 14(h).] On March 4, 2019, Meumann reportedly sent another letter to Peerless, attaching "updated medical records and bills resulting from Plaintiff's treatment with Dr. Vanston Masri, D.O." [Resp. 3.] Four days later, on March 8, 2019, Defendant's claim adjuster spoke with Plaintiff's counsel by telephone, and offered UIM coverage benefits. [Compl. ¶ 14(i).] Defendant's claim notes confirm that, early that same month, the insurer took certain action with respect to Plaintiff's claim. [Resp. Ex. 3.] On March 8, 2019, Defendant's claims adjuster requested that reserves be increased, and asked for additional settlement authority. [*Id.* at 2.] Also on March 8, 2019, supervisor Pickett performed a file review, allowing increases in the company reserve amount and settlement authority up to $168,597.26. [*Id.* at 1.] On March 19, 2019, the claim file was submitted to nurse review. [*Id.*] As of that date, Cherry Creek Neurology submitted additional materials, indicating Plaintiff was still treating with a neurologist. [*Id.*]

On May 22, 2019, Defendant informed Plaintiff that, based on the documentation submitted at that point, as well as the insured's request for a "Fishers payment," the insurer would accept "$67,541.86 in undisputed medical expenses." [Resp. Ex. 4.] The insurer agreed to send an immediate "Fishers payment in the amount of $42,541.86." [*Id.*] This determination was made without Defendant's request for an IME of Plaintiff.

Certain kinds of interim payments made to claimants by insurance companies derive from the Colorado Supreme Court ruling in *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501 (Colo. 2018). In *Fisher*, the court stated:

> [S]ection 10-3-1115's plain language is clear, and it imposes the duty it says it imposes—that is, an insurer can't unreasonably delay or deny paying a covered benefit without a reasonable basis for doing so. Moreover, nothing in the statute requires or supports withholding payment of undisputed covered benefits simply because other portions of an insured's UIM claim remain disputed.

*Id.* at 506. By its very definition, a payment made pursuant to *Fisher* contemplates that an insured's UIM claim remains unresolved, and that portions "remain disputed." *See id.* Otherwise, a payment would not be characterized as a *Fisher* payment.

Importantly, the *Fisher* payment in this case is clearly based on medical billing already accrued and submitted by Plaintiff. In other words, the *Fisher* payment encompasses those payments made for treatments occurring in the past; it does not factor in any future medical expenses or benefits owed, which were not medical billings. At the time of the payment, the necessity for future treatment, as well as the applicability of other benefits owed, in addition to payment of medical bills, was, and still remains, in dispute.

Plaintiff, however, illogically argues that May 22, 2019 is "when the Defendant apparently made its 'coverage decision' regarding Plaintiff's claims." [Resp. 7.] The court rejects this argument. The *Fisher* payment does no more than indicate acceptance of the treatments received by Plaintiff up to that date, given that he was undisputedly still receiving treatment for his injuries. Indeed, the *Fisher* payment established a floor for the claim, but went no further than that.

According to the Complaint, Plaintiff received a *Fisher* payment on May 23, 2019. [Compl. ¶ 14(o).]  Plaintiff's attorney provided newly generated medical bills from Dr. Masri, on June 6, 2019, and on July 2, 2019, as he also continued to call and leave messages and send written correspondence to Defendant through August 22, 2019.[2]  On October 11, 2019, this lawsuit was filed in El Paso County District Court, and on December 16, 2020, the case was removed to this federal court.  [Doc. No. 1.]  On April 21, 2020, Defendant requested an IME of Plaintiff with Dr. Rebekah Martin, M.D.  [Resp. 9.]

In this case, it is undisputed that Meumann continues to obtain treatment for injuries he claims to be accident-related, and that he continues to submit new medical records to Peerless. [Mot. 5-6.]  Plaintiff claims that he will continue to require accident-related treatment for the rest of his life.  [*Id.*]  In *Shultz*, of course, the plaintiff's medical treatment and his later claims were in the past, and coverage for the claims had been undisputedly previously made by the insurer. Therefore, *Shultz* is inapposite to this case.

District Judge William J. Martínez recently addressed a similar situation to the facts of this case in *Tedrow v. Sentry Ins.*, No. 19-CV-0685-WJM-NRN, 2018 WL 9869734, at *2 (D. Colo. Dec. 3, 2018).  In *Tedrow*, the adjuster communicated to the insured plaintiff, as follows:

> Based on the information provide[d], we have considered reasonable medical expenses of $7920.  Thus, we do not find that there are any uncompensated losses outside of the $25,000 provided by the liability carrier.  However, in an effort to resolve this matter, we will extend an offer of $1500 as full and final settlement of the underinsured motorist bodily injury claim.  If we an (sic) unsuccessful in reaching a resolution, then we would request an independent medical examination ["IME"]. . . . Please call me upon receipt of this letter so that we can work together to resolve this claim on behalf of our insured, William Tedrow.

---

[2] Given that the parties did not submit any claim notes dated beyond March 2019, the court is unable to confirm Defendants' actions as to that time period.

Id. at *2.  The plaintiff argued that the insurer had craftily tailored its correspondence with its insured, so as to tacitly deny coverage without expressly doing so, when in reality, the insurer had denied coverage.  Ultimately, when no resolution was reached, the insurer requested that the plaintiff undergo an IME.  Judge Martínez found, upon review of the correspondence, that "it was clear that the parties were in genuine negotiations, and that the insurance company did not—implicitly or explicitly—deny Plaintiff coverage." *Id*. at *4.

The same is true here.  In May of 2019, portions of this case were clearly in dispute. Plaintiff, himself, admits that he was still submitting billings and asking for UIM benefits, well after the lawsuit was filed.  At the time, no determination had been made concerning, *inter alia*, future damages, pain and suffering, economic loss, or permanent physical impairment.

Federal Rule of Civil Procedure 35(a)(1) provides:

> The court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

Fed. R. Civ. P. 35(a)(1).

The court recognizes that this case differs in one important aspect from *Tedrow*.  In *Tedrow*, the claims adjuster informed the insured claimant that, if a negotiated agreement was not reached, the insurer would request an IME of the insured.  *Tedrow*, 2018 WL 9869734, at *2. Here, by contrast, Peerless never mentioned an IME of Plaintiff, prior to April of 2020.  That omission, however, does not change the fact that the state of Plaintiff's *current* medical condition is in controversy here, especially considering Dr. Masri's opinion that radiofrequency ablation treatments, at a cost of $21,704.00 each, might need to be repeated indefinitely in the future, and

6

considering Plaintiff's level of possible impairment and quality of life, among other things.  [*See* Resp. Ex. 2 at 2-3.]

Accordingly, it is

**ORDERED** that "Defendant's Motion to Compel Fed. R. Civ. P. 35 Examination" [Doc. No. 26] is **GRANTED**.  Plaintiff shall undergo an independent medical examination at such a time and place as is agreeable to both Plaintiff and the examining physician.

Dated July 15, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge